UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PETE'S TOWING CO., a Florida
corporation,

    Plaintiff,

v.                                Case No.

CITY OF TAMPA, FLORIDA, a
municipal corporation, CITY OF TAMPA
POLICE CHIEF STEPHEN HOGUE,
SERGEANTS MICHAEL KITT and
JOSE PENICHET and
OFFICERS JOHNNY L. ADKINS,
ORLANDO L. GUDES, PATRICIA LASTRA,
DARYL JOHNSON, JOHN RICCARDO
and OTHER OFFICERS PRESENTLY
UNKNOWN, and ASSISTANT CITY
ATTORNEY LAURIE WOODHAM,

    Defendants.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

The Plaintiff, PETE'S TOWING CO., sues the Defendants, CITY OF TAMPA, FLORIDA; CITY OF TAMPA POLICE CHIEF STEPHEN HOGUE; SERGEANTS MICHAEL KITT and JOSE PENICHET; and OFFICERS JOHNNY L. ADKINS, ORLANDO L. GUDES, PATRICIA LASTRA, DARYL JOHNSON, JOHN RICCARDO and OTHER OFFICERS PRESENTLY UNKNOWN, and ASSISTANT CITY ATTORNEY LAURIE WOODHAM, and alleges as follows:

**A. JURISDICTION**

1. The Plaintiff invokes the Court's jurisdiction under 28 U.S.C. § 1331, as this case arises under the Constitution and laws of the United States.

2. The events giving rise to this action occurred in Tampa, Florida.

## B. VENUE

3. Plaintiff is a Florida corporation organized for purposes of engaging in the lawful business of consensual and non-consensual towing of motor vehicles in the Tampa, Florida, area. Plaintiff is a "person" within the meaning of 42 U.S.C. § 1983.

## C. PARTIES

4. Defendant City of Tampa, Florida, is a municipality and a "person" within the meaning of 42 U.S.C. § 1983 and is a legal entity suable in its own name under Florida law.

5. Defendant Hogue is, and was at all material times, the Police Chief of the City of Tampa and was, as such, the policy maker in charge of and responsible for the Defendant City's regulation of vehicle towing within the city limits.

6. Defendants Sergeant Kitt and Sergeant Penichet are supervisory officials with the City of Tampa Police Department, and the remaining named and unnamed officers are or were, at all material times, sworn police officers employed by the City of Tampa and subject to the supervision of Sergeants Kitt and Penichet and, ultimately, Chief Hogue.

7. Defendant Laurie Woodham was, at all material times, Assistant City Attorney for Defendant City of Tampa.

## D. FACTS

8. From about July of 2005 through July 9, 2007, the Defendants Sergeant Penichet and the named and unnamed officers conducted a campaign of

intimidation, and harassment, involving numerous unconstitutional and otherwise unlawful acts against the Plaintiff, as described in more detail in paragraph 12, in an effort to drive it out of its lawful business. Such actions, all of which were undertaken under color of state law, were motivated by arbitrary and malicious ill-will directed toward Plaintiff, and were such that a reasonable public official should know they were in violation of clearly-established law.

9. During the relevant period, at least 282 official police reports were generated involving police activity undertaken against Plaintiff, its owners, agents and employees, involving at least 109 different police officers, over a period of 25 months.

10. During the preceding 20 months, by contrast, only 14 such reports had been generated regarding the Plaintiff.

11. At all material times, Plaintiff operated its towing business and attendant activities in a lawful manner, and has been described by other City of Tampa officials as one of the City's best outside service vendors.

12. Nonetheless, examples of the harassment to which Plaintiff, its owners, agents and employees were subjected by Defendants include the following [reflecting names of individual Defendants involved and dates if presently known]:

   a. arresting Plaintiff's co-owner, Ian McGeehan, without probable cause for removing a trespasser from Plaintiff's premises for threatening Plaintiff's employee;

b. directing Plaintiff's employees, under threat of arrest, to release lawfully towed vehicles without charge to the owners and to persons lacking proof of ownership, in violation of Florida law;

c. appearing at Plaintiff's premises and falsely advising owners of towed vehicles that Plaintiff "steals cars" and charges excessive fees, and further advising them to bring legal actions against Plaintiff (Defendant Gudes);

d. advising Plaintiff's employees to leave their employment with Plaintiff and find different jobs (Defendant Gudes);

e. appearing at the homes of Plaintiff's employees and advising them they were subject to arrest for having dispatched tow trucks in response to lawful towing orders (Defendant Penichet);

f. conducting roadside stops, without probable cause, of Plaintiff's employees for "attitude checks";

g. threatening Plaintiff's owners with arrest on extortion charges and other charges (Defendants Woodham [5/9/07] P. Lastra [8/16/06] and Penichet [5/9/06]) and threatening Plaintiff's employees with arrest for refusing to release vehicles that had been lawfully towed (Defendants Moore, Riccardo [6/8/07], Gudes [early 2006 to present], Johnson [5/13/07]);

h. telephoning the mother of Plaintiff's employee and telling her that the employee's continued work for Plaintiff would involve her in "more grand theft auto" and extortion by the Plaintiff;

4

i. unlawfully detaining and handcuffing Plaintiff's employees at its place of business and imprisoning them in a police cruiser;

j. kicking in the door of a residential quadplex near Plaintiff's premises and announcing that they would arrest anyone inside who worked for Plaintiff;

k. advising an applicant for employment with Plaintiff that he should not apply to work for Plaintiff;

l. advising Plaintiff's employees that Plaintiff was under investigation by the FBI and that the Plaintiff's business was about to get "raided";

m. appearing at Plaintiff's place of business and advising owners of towed vehicles that Plaintiff was a "fraud" and advising them not to pay to have their vehicles released;

n. advising owners of towed vehicles to sue Plaintiff, as such suits would produce a "big return" and that Plaintiff's business would be closed (Defendant Gudes);

o. advising employees and owners of towed vehicles that the officers would see to it that Plaintiff was taken off the City's towing rotation;

p. refusing to remove unruly and threatening customers and trespassers from Plaintiff's premises as requested by Plaintiff's employees;

q. threatening one of Plaintiff's employees, who was driving one of Plaintiff's tow trucks, with arrest for stealing a car; handcuffing the employee; and later releasing him after asking him to help the police "bring Pete down" (referring to the Plaintiff); and assuring the

5

      employee that if he cooperated in their effort to put Plaintiff out of business they would "leave him alone";

  r. threatening to arrest one of Plaintiff's employees for refusing a Tampa police detective access to Plaintiff's property without a warrant; and

  s. diverting Plaintiff's customers to other businesses owned by some Defendant Officers or their associates.

13. The foregoing actions were so persistent, widespread and pervasive that they constituted a custom or usage of the Defendant City and were such that the City's policy-making officials knew or should have known that such actions were ongoing yet took no action to stop them.

14. Indeed, Plaintiff repeatedly filed protests and complaints with the Defendant City and its Police Department regarding the actions alleged above, but no remedial action was taken. On the contrary, shortly after complaining about such conduct through the Police Department's Internal Affairs Unit, Plaintiff was removed from the Police Department's Towing Rotation on June 8, 2007, and from the Hillsborough County Sheriff's Towing Rotation, in retaliation for having so complained.

15. The actions described above reflect a conspiracy involving numerous members of the City of Tampa Police Department, including supervisors, and, on information and belief, may have involved higher ranking officials of the City.

16. No other towing company operating in the City of Tampa has been subjected to the kind of harassment and intimidation alleged above.

17. Defendants have also caused Plaintiff to be subjected to further harassment by the City's Code Enforcement officers through unjustified complaints and unlawful fines against Plaintiff.

18. Plaintiff has suffered and continues to suffer substantial economic loss as a result of the Defendant City's custom or usage of allowing the campaign of harassment and intimidating described above to be maintained indefinitely, and the Defendant City's maintenance of such custom or practice is the legal cause of Plaintiff's damages.

19. Plaintiff demands a trial by jury as to all claims to which a jury trial is required.

20. Plaintiff seeks to recover costs and attorney's fees, pursuant to 42 U.S.C. § 1988.

## FEDERAL CLAIMS

### COUNT I – SUBSTANTIVE DUE PROCESS AND CONSPIRACY

21. The campaign of harassment and intimidation described above reflects the enforcement of state and local law in an arbitrary or discriminatory manner reflecting an intentional conspiracy consisting of acts which, taken together, shock the conscience and as to which the Defendant City's responsible officials showed deliberate indifference, causing Plaintiff damage. As such, such conduct violates 42 U.S.C. §§ 1983 and 1985(3).

### COUNT II -- VIOLATION OF PLAINTIFF'S LIBERTY INTEREST

22. The acts described above deprived Plaintiff of its liberty interest by subjecting it to accusations of criminal conduct in an ongoing effort to destroy its

business and prevent it from engaging in its lawful business activities in violation of 42 U.S.C. § 1983.

## COUNT III – PROCEDURAL DUE PROCESS

23. Defendant City deprived Plaintiff of its property interest in conducting a lawful business by endeavoring to destroy such business without providing Plaintiff any meaningful administrative or other opportunity to challenge and bring such actions to an end, in violation of 42 U.S.C. § 1983.

## COUNT IV – EQUAL PROTECTION

24. The acts described above deprived Plaintiff of the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution by subjecting it to invidious discrimination for unknown reasons, thus discriminating against it as a "class of one," in violation of 42 U.S.C. § 1983.

## COUNT V – FIRST AMENDMENT RETALIATION

25. Plaintiff's complaints to the City's responsible officials, as alleged in Paragraph 13, above, were protected by the First Amendment to the United States Constitution and the retaliatory actions of removing Plaintiff from the City and County towing rotations abridged such rights, in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff demands judgment for compensatory damages against all Defendants, punitive damages against those individual Defendants who participated in, authorized, encouraged, approved, or acquiesced in the unlawful acts alleged herein,

and further demands against all Defendants recovery of its costs of action and a reasonable attorney's fee.

  /s/ Robert F. McKee
MARK F. KELLY
Florida Bar Number 216755
mfk@kellyandmckee.com
ROBERT F. McKEE
Florida Bar Number 295132
kmpa@kellyandmckee.com
MELISSA C. MIHOK
Florida Bar Number 555851
mcm@kellyandmckee.com
KELLY & McKEE, P.A.
1718 E. 7th Ave., Suite 301 (33605)
P.O. Box 75638
Tampa, FL 33675-0638
(813) 248-6400
(813) 248-4020 (Facsimile)