UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PETE'S TOWING CO.,

     Plaintiff,

v.                             CASE NO: 8:08-cv-209-T-23EAJ

CITY OF TAMPA, FLORIDA, et al.,

     Defendants.

_____/

## **ORDER**

In this civil rights action under 42 U.S.C. § 1983, the plaintiff sues the City of Tampa, Tampa Police Chief Stephen Hogue, Sergeants Michael Kitt and Jose Penichet, Officers Johnny L. Adkins, Orlando L. Gudes, and Patricia Lastra,[1] and Assistant City Attorney Laurie Woodham.  The complaint asserts a claim for "substantive due process and conspiracy" (count one), "violation of plaintiff's liberty interest" (count two), procedural due process (count three), equal protection (count four), and "first amendment retaliation" (count five).  Each defendant except Adkins moves (Docs. 4, 5, 6, 7) to dismiss because the complaint fails to state a claim and because each individual defendant enjoys qualified immunity.  The plaintiff (Docs. 13, 14, 15, 16) responds in opposition.

---

[1]  An August 14, 2008, order (Doc. 25) approves the parties' joint stipulation of dismissal with prejudice of Officers Daryl Johnson and John Riccardo.

## BACKGROUND

The complaint alleges that, from about July, 2005, to July, 2007, the defendant Sergeant Jose Penichet and "named and unnamed officers" conducted a campaign of intimidation and harassment intended to drive the plaintiff from the automotive towing business.  Besides alleging a dramatic increase in the number of "official police reports . . . involving police activity undertaken against Plaintiff, its owners, agents, and employees" (282 reports, involving at least 109 different police officers, in twenty-five months as compared to "only 14 reports . . . regarding the Plaintiff" during the preceding twenty months), the complaint includes the following allegations.

- Unspecified defendants arrested Ian McGeehan, a co-owner of Pete's, without probable cause for removing a trespasser; conducted "roadside stops, without probable cause . . . of Plaintiff's employees for 'attitude checks'"; and "unlawfully detain[ed] and handcuff[ed] Plaintiff's employees at its place of business and imprison[ed] them in a police cruiser."

- Some defendants and non-party Tampa police officers threatened the plaintiff's owners and employees with arrest for acts or omissions in the course of their business.  For example, (i) several defendants threatened the plaintiff's owners with arrest on extortion and other charges (Woodham and Penichet on May 9, 2007, Lastra on August 16, 2006); (ii) other defendants threatened the plaintiff's employees with arrest for sending tow trucks "in response to lawful towing orders" (Penichet), and for refusing to release lawfully towed vehicles (Riccardo on June 6, 2007, Gudes from "early 2006 to present," and Johnson on May 13, 2007) and (iii) unspecified defendants threatened one of the plaintiff's drivers with arrest for stealing a car, threatened an employee with arrest for refusing Tampa police detectives access to the plaintiff's property without a warrant, and directed the plaintiff's employees under threat of arrest to release lawfully towed vehicles "without charge to their owners and to persons lacking proof of ownership, in violation of Florida law."

- Gudes falsely informed owners of towed vehicles that the plaintiff "steals cars and charges excessive fees," advised customers to sue the plaintiff, and informed customers of the prospective closing of the plaintiff's business.  Additionally, unspecified defendants advised owners of towed vehicles "that Plaintiff was a 'fraud,'" advised them not to pay for the release of their vehicles, and informed

- 2 -

them (as well as the plaintiff's employees) that the officers would ensure the plaintiff's removal from the City's towing rotation.

•   Gudes encouraged the plaintiff's employees to leave the plaintiff's employment. Additionally, unspecified defendants sought to dissuade an applicant from accepting employment with the plaintiff, advised another employee's mother that continued employment with the plaintiff would involve the employee in further "grand theft auto" and extortion, and advised employees that the plaintiff was under investigation by the FBI and that the plaintiff's business "was about to get 'raided'."

•   Unspecified defendants refused requests to remove unruly and threatening customers and "diverted Plaintiff's customers to other businesses owned by some Defendant Officers or their associates."

The complaint further alleges that "no other towing company operating in the City of Tampa has been subjected to [this] kind of harassment and intimidation" and that, although the plaintiff repeatedly filed complaints with the City and the Tampa Police Department, "no remedial action was taken."  Instead, shortly after complaining to the Police Department's Internal Affairs Unit, "Plaintiff was removed from the Police Department's Towing Rotation on June 8, 2007, and from the Hillsborough County Sheriff's Towing Rotation, in retaliation for having so complained."

**DISCUSSION**

A motion under Rule 12(b)(6), Federal Rules of Civil Procedure, challenges the legal sufficiency of the complaint.  On a Rule 12(b)(6) motion, the complaint's factual allegations are accepted as true and construed most favorably to the plaintiff.  Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002).  "However, a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for her."  Peterson v. Atlanta Hous. Auth., 998 F.2d 904, 912 (11th Cir. 1993).  Generally, the Federal Rules

of Civil Procedure include no requirement that the plaintiff detail the facts upon which

the plaintiff bases a claim.  Instead, Rule 8(a)(2) requires a short and plain statement of

the claim that fairly notifies the defendant of both the claim and the supporting grounds.

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).  However, "Rule 8(a)(2)

still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."

Twombly, 127 S. Ct. at 1965 n.3.  The plaintiff's "obligation to provide the 'grounds' of

his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at

1964-65 (citation omitted).  "Factual allegations must be enough to raise [the plaintiff's]

right to relief above the speculative level, on the assumption that all of the allegations in

the complaint are true." Twombly, 127 S. Ct. at 1965 (citations omitted).  In short, the

complaint must include "enough facts to state a claim to relief that is plausible on its

face." Twombly, 127 S. Ct. at 1974.  Further, "while notice pleading may not require

that the pleader allege a specific fact to cover every element or allege with precision

each element of a claim, it is still necessary that a complaint contain either direct or

inferential allegations respecting all the material elements necessary to sustain a

recovery under some viable legal theory." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500

F.3d 1276, 1282-83 (11th Cir. 2007) (internal quotation marks and citations omitted).

Finally, "[a] complaint is also subject to dismissal under Rule 12(b)(6) when its

allegations–on their face–show that an affirmative defense bars recovery on the claim."

Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001).

Qualified Immunity

On a motion to dismiss, "the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined." GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1366 (11th Cir. 1998).  A Section 1983 claim against a person arguably entitled to qualified immunity (e.g., a government official sued in his individual capacity) confronts a heightened pleading requirement. GJR Invs., 132 F.3d at 1367.  To protect public officials from the burdens of protracted litigation and dispose of non-meritorious claims, the Eleventh Circuit has "tightened the application of Rule 8 with respect to § 1983 cases" and requires a Section 1983 plaintiff to allege "with some specificity" the facts supporting a claim against a public official arguably entitled to qualified immunity. GJR Invs., 132 F.3d at 1367.[2]  The complaint must include "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (quoting Venney v. Hogan, 70 F.3d 917, 922 (6th Cir. 1995), abrogation recognized by Goad v. Mitchell, 297 F.3d 497, 503 (6th Cir. 2002)).[3] Although controversial, the Eleventh Circuit's heightened pleading requirement enables a potentially immune defendant to frame a fact-specific qualified immunity defense at an

---

[2]  Following Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993), Crawford-El v. Britton, 523 U.S. 574 (1998), and Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), the majority of courts of appeals reject a heightened pleading requirement for a Section 1983 claim against an individual defendant arguably entitled to qualified immunity. See Gene Martin Auto Sales, Inc. v. Davis, No. 2:07CV937-MEF, 2008 WL 1990003, *3 n. 4 (M.D. Ala. May 5, 2008); see also Erickson v. Pardus, 127 S. Ct. 2197 (2007) (applying the pleading standard in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007), to a Section 1983 claim against an individual defendant).  But see Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1274-1275 (11th Cir. 2008), Epps v. Watson, 492 F.3d 1240, 1242 (11th Cir. 2007).

[3]  But see Thomas v. Independence Twp., 463 F.3d 285, 293-94 (3d Cir. 2006); Jacobs v. City of Chicago, 215 F.3d 758, 765 n.3 (7th Cir. 2000).

early stage and enables the court to conduct the fact-specific inquiry contemplated by

Saucier v. Katz, 533 U.S. 194 (2001).  Absent a heightened pleading requirement, a

meaningful Saucier inquiry is often impossible.  Accordingly, some courts rejecting a

heightened pleading requirement as inconsistent with Rule 8(a)'s notice pleading

standard have adopted a rule that effectively reproduces the requirement.  See, e.g.,

Thomas v. Independence Twp., 463 F.3d 285, 300-302 (3d Cir. 2006); cf. Schultea v.

Wood, 47 F.3d 1427, 1433-34 (5th Cir. 1995).[4]

Qualified immunity protects a government official performing discretionary

functions if the official's conduct "does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  Beshers v.

Harrison, 495 F.3d 1260, 1265 (11th Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S.

800, 818 (1982)).  Qualified immunity protects "all but the plainly incompetent or those

who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  Moreover,

"[b]ecause qualified immunity is 'an entitlement not to stand trial or face the other

burdens of litigation,' questions of qualified immunity must be resolved 'at the earliest

possible stage in litigation.'"  Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003)

(citations omitted).  "It is therefore appropriate for a district court to grant the defense of

qualified immunity at the motion to dismiss stage if the complaint 'fails to allege the

---

[4] The heightened pleading requirement has no application to the plaintiff's claims against the City, see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993) (holding that a court may not apply a pleading standard more stringent than that imposed by Rule 8 to a Section 1983 claim asserting municipal liability), or to the claim under 42 U.S.C. § 1985(3), see Johnson v. City of Fort Lauderdale, 126 F.3d 1372, 1379-80 (11th Cir. 1997) (qualified immunity is not available to a government official sued in his individual capacity under 42 U.S.C. § 1985(3)); Hayden v. Coppage, 533 F. Supp. 2d 1186, 1198 (M.D. Ala. 2008) ("The heightened pleading rules . . . do not govern the determination of whether the complaint sufficiently alleges a § 1985(3) claim.").

violation of a clearly established constitutional right.'" Gonzalez, 325 F.3d at 1233 (citation omitted).[5]

Saucier v. Katz first requires a determination whether the plaintiff's allegations, if true, establish a specific constitutional violation. Saucier v. Katz, 533 at 201.[6] "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. If the complaint alleges a constitutional violation, the inquiry turns to whether that right was clearly established by then-existing legal precedent. Saucier, 533 U.S. at 201. "Clearly established" means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

### Claims Against the City

Although the plaintiff's shotgun pleading inhibits understanding which claim is directed at which defendant, the complaint appears to assert each count against the City.

### Substantive Due Process

To establish that a public official's executive act violates substantive due process, a plaintiff must show that the official's conduct (1) violates a fundamental constitutional

---

[5] See also Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."). But see Thomas, 463 F.3d at 293-94 (concluding that "a plaintiff has no obligation to plead a violation of clearly established law in order to avoid dismissal on qualified immunity grounds.").

[6] "A public official who asserts a defense of qualified immunity must establish that he was engaged in a discretionary function when he performed the acts of which the plaintiff complains." Epps, 492 F.3d at 1243 (citation and internal quotation marks omitted). However, no party disputes that each defendant acted within his discretionary authority as a public official at the pertinent time.

right and (2) shocks the conscience.  See County of Sacramento v. Lewis, 523 U.S. 833, 847 and n.8 (1998); Flowers v. City of Minneapolis, Minn., 478 F.3d 869, 873 (8th Cir. 2007).[7]  The complaint alleges no violation of a right recognized as fundamental. Instead, the complaint alleges violations of state-created property rights not protected by substantive due process from executive abuse of power.  See Dacosta v. Nwachukwa, 304 F.3d 1045, 1048 (11th Cir. 2002).[8]  Although the complaint alleges an arrest without probable cause of several non-parties, which arrest violates the Fourth Amendment, see Durruthy v. Pastor, 351 F.3d 1080, 1088 (2003), the plaintiff asserts no violation of the plaintiff's Fourth Amendment rights.[9]  In any event, substantive due process affords no right that is separate from the Fourth Amendment to freedom from arrest without probable cause.[10]  Additionally, even if condemnable or actionable under state law, the alleged conduct (which otherwise comprises threats and verbal harassment) lacks the severity and abandon to shock the judicial conscience.  Finally,

_____

[7]  See also C.B. By and Through Breeding v. Driscoll, 82 F.3d 383, 387 (11th Cir. 1996); McKinney v. Pate, 20 F.3d 1550, 1556-57(11th Cir. 1994) (en banc).  Of course, the requirements differ for establishing that a "legislative act" violates substantive due process.  See County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998); McKinney, 20 F.3d at 1557 n.9; Greenbriar Village, L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1263 (11th Cir. 2003).  Although reviewed under a highly deferential standard, a law that interferes with a right not recognized as fundamental may nevertheless violate substantive due process.  See, e.g., Washington v. Glucksberg, 521 U.S. 702, 728 (1997).

[8]  See also McKinney v. Pate, 20 F.3d at 1556; Greenbriar Village, 345 F.3d at 1262 and n.3; Morley's Auto Body, Inc. v. Hunter, 70 F.3d 1209, 1217 n.5 (11th Cir. 1995).

[9]  See Crosby v. Paulk, 187 F.3d 1339, 1346 (11th Cir. 1999) ("Freedom from unreasonable searches and seizures . . . is a personal right which cannot be asserted vicariously.") (citing Rakas v. Illinois, 439 U.S. 128, 133-34 (1978)); see also Jacinto Sav. & Loan v. Kacal, 928 F.2d 697, 704 (5th Cir. 1991).

[10]  See Albright v. Oliver, 510 U.S. 266, 273 (1994) (Rehnquist, C.J., for the plurality) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing' such a claim.") (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).

even if the alleged threats and verbal harassment of the plaintiff's employees and owners[11] could impinge substantive due process,[12] neither an employee nor an owner is a party to this lawsuit.[13]

Procedural Due Process

A Section 1983 claim alleging a denial of procedural due process requires proof of "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." Arrington v. Helms, 438 F.3d 1336, 1347-48 (11th Cir. 2006) (citations omitted). "Property interests stem not from the Constitution, but from such sources as statutes, regulations, ordinances, and contracts." Arrington, 438 F.3d at 1347 (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 576-77 (1972)). "Whether these sources create a property interest must be decided by reference to state law." Arrington, 438 F.3d at 1347 (citing Roth, 408 U.S. at 577).

Count two asserts that the acts alleged in the complaint "deprived Plaintiff of its liberty interest by subjecting it to accusations of criminal conduct in an ongoing effort to destroy its business and prevent it from engaging in its lawful business activities in violation of 42 U.S.C. § 1983. Count three alleges that the City "deprived Plaintiff of its

---

[11] See Complaint ¶ 3 ("Plaintiff is a Florida corporation").

[12] See King v. Olmsted County, 117 F.3d 1065, 1067 (8th Cir. 1997) ("Generally, mere verbal threats made by a state actor do not constitute a § 1983 claim") (citation omitted); Woods v. Valentino, 511 F. Supp. 2d 1263, 1285-86 (M.D. Fla. 2007) (concluding that verbal threats and harassment by a governmental official do not generally violate substantive due process); Cherfils v. Jones, No. 3:07-cv-391, 2008 WL 817098, 4 (N.D. Fla. Mar. 25, 2008) (collecting cases); see also Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991); Garcia v. Munoz, No. 08-1648, 2008 WL 2064476, 9 (D.N.J. May 14, 2008); Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 382 (C.D. Ill. 1993); cf. Evans v. City of Zebulon, GA, 351 F.3d 485, 495-96 (11th Cir. 2003), vacated, 364 F.3d 1298 (11th Cir. 2004), rehearing en banc granted on other grounds, Evans v. Stephens, 407 F.3d 1272 (11th Cir. 2005).

[13] See also Bailey v. Town of Lady Lake, Fla., No. 5:05-cv-464-Oc-10GRJ, 2007 WL 677995, *8 (M.D. Fla. Mar. 5, 2007) ("It is clear that at least in this Circuit, there is no substantive due process right to . . . business reputation.") (citing McKinney, 20 F.3d at 1556-60).

property interest in conducting a lawful business by endeavoring to destroy such business without providing Plaintiff any meaningful administrative or other opportunity to challenge and bring such actions to an end."

To the extent the complaint purports to assert a procedural due process violation based on the plaintiff's interest in its business reputation only, the complaint fails to state a claim because "allegations of injury to reputation alone do not support a section 1983 claim for violation of due process, and therefore must be accompanied by a constitutionally recognized injury." Cypress Ins. Co. v. Clark, 144 F.3d 1435, 1436 (11th Cir. 1998) (citing Paul v. Davis, 424 U.S. 693, 712 (1976)). "This rule, labeled the 'stigma-plus' standard, requires a plaintiff to show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation." Cypress Ins. Co.,144 F.3d at 1437 (citing Paul v. Davis, 424 U.S. at 712). "The rule is designed to prevent the Due Process Clause from becoming an all-purpose constitutionalization of state tort law." Cypress Ins. Co.,144 F.3d at 1438 (citing Paul v. Davis, 424 U.S. at 712). In short, unless the plaintiff alleges and proves a deprivation of a constitutionally recognized liberty or property interest apart from harm to business reputation, the plaintiff cannot recover for harm to the plaintiff's business reputation. See Cypress Ins. Co.,144 F.3d at 1438; Schulze v. Broward County Bd. of County Comm'rs, 190 Fed. Appx. 772, 774 (11th Cir. 2006).

To the extent the complaint purports to assert a procedural due process violation based on the plaintiff's removal from the Tampa Police Department's towing rotation, the complaint fails to allege facts showing that the plaintiff had a protected property or liberty interest in remaining on the list. See Morley's Auto Body, Inc. v. Hunter, 70 F.3d 1209, 1217 (11th Cir. 1995) (holding that two Florida wrecker service companies failed

to allege a property interest protected by the Due Process Clause because the plaintiffs possessed no contractual right to remain on the list and "the plaintiffs have not, and apparently cannot, point to any Florida statute, state administrative regulation, or any other source of Florida law that provides the asserted entitlement in remaining on the wrecker rotation list . . . .").[14]

However, the complaint includes allegations that the defendants engaged in an ongoing campaign of intimidation and harassment "to destroy its business and prevent it from engaging in its lawful business activities" without due process of law.  "The right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments."  Piecknick v. Pennsylvania, 36 F.3d 1250, 1259 (3d Cir. 1994) (citing Greene v. McElroy, 360 U.S. 474, 492 (1959), and Truax v. Raich, 239 U.S. 33, 41 (1915)); Thomas v. Independence Twp., 463 F.3d 285, 297 (3d Cir. 2006); Cowan v. Corley, 814 F.2d 223, 227 (5th Cir. 1987).  "[T]he Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation.  State actions that exclude a person from one particular job are not actionable in suits . . . under the due process clause." Bernard v. United Township High Sch. Dist. No. 30, 5 F.3d 1090, 1092 (7th Cir.1993).  "'It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment.' "  Bernard, 5 F.3d at 1092 (quoting

---

[14]  The plaintiff asserts (Doc. 13 at 3) that "[t]he complaint's allegations adequately set forth Plaintiff's contracts with the City . . . ."  However, the complaint alleges no contract with the City and no other fact supporting an entitlement under Florida law to remain on the towing rotation.

<u>Wroblewski v. City of Washburn</u>, 965 F.2d 452, 455 (7th Cir.1992)).[15] The alleged harassment campaign removed or significantly altered the plaintiff's liberty and property interests in the business of towing.  <u>See</u> <u>San Jacinto Sav. & Loan v. Kacal</u>, 928 F.2d 697, 704 (5th Cir. 1991) (reversing an order that grants summary judgment and allowing a Section 1983 due process claim based on an allegation that police harassment forced the plaintiff to close her business); <u>cf</u>. <u>Benigni v. City of Hemet</u>, 879 F.2d 473 (9th Cir. 1988).  In short, if favorably construed, the complaint sufficiently alleges a deprivation of the plaintiff's liberty and property interests without due process of law.[16]  Additionally, the complaint alleges that the deprivation resulted from a practice so widespread and persistent as to constitute a custom with the force of law under <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 691 (1978).

However, although adequately alleging a due process violation by the City, counts two and three fail to state a violation of clearly established federal law.  First, <u>Morley</u> refuses to recognize a cognizable burden on the plaintiffs' "occupational liberty" when

---

[15]  <u>See also</u> <u>Conn v. Gabbert</u>, 526 U.S. 286, 291-92 (1999) (stating that there is "some generalized due process right to choose one's field of private employment" but noting that cases recognizing the right "all deal with a complete prohibition of the right to engage in a calling, and not [a] . . . brief interruption.").

[16]  The defendants do not argue that the complaint fails to allege the non-existence of adequate post-deprivation remedies under state law.  <u>See</u> <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981), <u>overruled on other grounds</u> by <u>Daniels v. Williams</u>, 474 U.S. 327 (1986); <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984); <u>Zinerman v. Burch</u>, 494 U.S. 113, 115 (1990) ("[A] deprivation of a constitutionally protected property interest caused by a . . . random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate postdeprivation remedy.").  The plaintiff argues that no such allegation is required because the acts alleged in the complaint were performed "pursuant to a <u>de facto</u> policy" and therefore were not "random and unauthorized" within the meaning of <u>Parratt</u> and <u>Hudson</u>. However, the feasibility of pre-deprivation process and hence the inadequacy of post-deprivation process, <u>see</u> <u>Bendiburg v. Dempsey</u>, 909 F.2d 463, 470 (11th Cir. 1990) ("Post-deprivation remedies do not provide due process if pre-deprivation remedies are practicable."), in the circumstances alleged is, to say the least, unclear.  <u>See</u> <u>Zinerman</u> , 494 U.S. at 137 (noting the non-feasibility on pre-deprivation process in cases involving defendants who "were bent upon effecting the substantive deprivation and would have done so despite any and all predeprivation safeguards").  In any event, if liberally construed, the complaint alleges the inadequacy of post-deprivation remedies under state law.  <u>See</u> Compl. ¶ 23.

the defendants' conduct (removal of the plaintiff towing services from a towing rotation) resulted in a diminution of their business but left them otherwise free to pursue their occupation. <u>Morley</u> thus supports the view that a diminution in business resulting from the alleged harassment does not rise to the level of a constitutionally cognizable injury to the plaintiff's liberty or property interests.

Second, the conduct actually attributed to any specific individual defendant consists of verbal threats and verbal harassment, which are generally not actionable under Section 1983. <u>See</u> <u>King v. Olmsted County</u>, 117 F.3d 1065, 1067 (8th Cir. 1997) ("Generally, mere verbal threats made by a state actor do not constitute a § 1983 claim") (citation omitted); <u>see also</u> <u>supra</u>, note 12.

Third, the only pertinent[17] authority cited by the plaintiff is <u>Swint v. City of Wadley, Ala.</u>, 51 F.3d 988 (11th Cir. 1995), in which owners of a nightclub contended "that due process liberty and property rights were violated by a deliberate attempt of the defendants to drive the Club out of business through pretextual law enforcement raids." 51 F.3d at 1001. To support the claim, the <u>Swint</u> plaintiffs cited <u>Benigni v. City of Hemet</u>, 879 F.2d 473 (9th Cir. 1988), in which the Ninth Circuit, "without explanation or citation to authority," <u>Gardner v. City of Waukegan</u>, No. 98 C 5372, 1999 WL 410009, *5 (N.D. Ill. June 2, 1999), upheld a jury verdict based in part on a claim that police police harassment of the plaintiff's business and customers that forced the plaintiff to sell the

---

[17] "[D]ecisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state . . . can clearly establish the law." <u>McClish v. Nugent</u>, 483 F.3d 1231, 1237 (11th Cir. 2007); <u>see also</u> <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1033 n.10 (11th Cir. 2001) ("Each jurisdiction has its own body of law, and splits between jurisdictions on matters of law are not uncommon. We do not expect public officials to sort out the law of every jurisdiction in the country.").

business at a loss infringed the plaintiff's constitutional right to pursue an occupation .

Swint states:

> [u]nder qualified immunity analysis, the question is whether it was clearly established at the time of the raids that the Due Process Clause proscribed attempts by law enforcement to force citizens out of business through the use of repeated and improperly motivated raids of their business establishments.  It may have been in the Ninth Circuit by virtue of the Benigni decision, but the courts of appeals generally and this circuit in particular have not addressed the specific question involved.  Plaintiffs' counsel conceded as much at oral argument when he stated that he had located no authority that clearly established on these facts a due process right that is separate and distinct from an equal protection right.

Swint, 51 F.3d at 1001.  Accordingly, Swint concludes that the purported due process right was not clearly established in the Eleventh Circuit and that the defendants were therefore entitled to qualified immunity on the claim.  Furthermore, Swint, which preceded Saucier v. Katz, 533 U.S. 194, 200, 121 (2001), does not itself conclude that the alleged due process right exists.

Equal Protection

Count four alleges that the defendants violated the Fourteenth Amendment's Equal Protection Clause "by subjecting [the plaintiff] to invidious discrimination for unknown reasons, thus discriminating against [the plaintiff] as a 'class of one.'"  To state an claim under the Equal Protection Clause under a "class of one" theory of liability (as distinguished from a traditional selective enforcement claim), a plaintiff need allege only intentional treatment that differs from the treatment of a similarly situated person without a rational basis for the difference.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  However, "[a] showing that two [persons] were similarly situated requires some specificity," Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir.), cert. denied, 127 S. Ct. 559 (2006), because "different treatment of dissimilarly situated

- 14 -

persons does not violate the equal protection clause," Campbell, 434 F.3d at 1314

(internal quotation marks and citation omitted).  To be considered "similarly situated,"

comparators "must be prima facie identical in all relevant respects."  Campbell, 434 F.3d

at 1314 (quoting McDonald v. Village of Winnetka, 371 F.3d 992, 1002 (7th Cir.

2004)).[18]  Accordingly, "[a] 'class of one' plaintiff might fail to state a claim by omitting

key factual details in alleging that it is 'similarly situated' to another."  Griffin Indus., 496

F.3d at 1205 (citation omitted).[19]

Because the complaint includes no allegation that the plaintiff was treated

differently owing to membership a suspect class or exercise of a fundamental right,[20]

ordinary rational-basis review (which requires a claimant to exclude every conceivable

rational basis for the challenged action) applies to the claim.  See Central State Univ. v.

Am. Ass'n of Univ. Professors, 526 U.S. 124, 127-28 (1999); FCC v. Beach Commc'ns.

---

[18]  See also Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1205 (11th Cir. 2007) ("[W]hen plaintiffs in 'class of one' cases challenge the outcome of complex, multi-factored government decision-making processes, similarly situated entities 'must be very similar indeed.'"); Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005) ("In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high."), overruled on other grounds, Appel v. Spiridon, 531 F.3d 138, 139-40 (2d Cir. 2008).

[19]  See also GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1367-68 (11th Cir. 1998) ("[T]he complaint does not present a single instance in which a similarly situated developer was granted a permit; it merely alleges that nameless, faceless 'other' permit applicants were given better treatment. Bare allegations that 'other' applicants, even 'all other' applicants, were treated differently do not state an equal protection claim . . . ."); Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1274 (11th Cir. 2008); Hawkins v. Eslinger, No. 6:07-cv-1261-Orl-19GJK, 2008 WL 2074409, *2 (M.D. Fla. May 15, 2008).  But see Cohn v. New Paltz Cent. Sch. Dist., 171 Fed. Appx. 877, 879, 2006 WL 522102, 1 (2d Cir. 2006) ("[A]t the pleading stage, a complaint alleging a 'class of one' Equal Protection violation need not identify actual instances where others have been treated differently, and . . . it is sufficient to make the more general allegation that similarly-situated people have been treated differently . . . .").

[20]  Although dissimilar treatment based on the exercise of a First Amendment right also may violate the Equal Protection Clause, see Wayte v. United States, 470 U.S. 598, 608-09 (1985); cf. Police Dep't v. Mosley, 408 U.S. 92, 95 (1972), the allegation that Pete's was retaliated against for complaining to the City and the Police Department is more appropriately analyzed as a First Amendment claim.  See Watkins v. Bowden, 105 F.3d 1344, 1354-55 (11th Cir. 1997).

Inc., 508 U.S. 307, 313 (1993).  Under that highly deferential standard, the government need not "actually articulate at any time the purpose or rationale supporting its classification."  Nordlinger v. Hahn, 505 U.S. 1, 15 (1992).  "Rather, the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification."  Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 367 (2001) (internal quotation marks and citations omitted); Thompson v. W. States Med. Ctr., 535 U.S. 357, 373 (2002) ("hypothesized justifications" are sufficient). Once a conceivable rational basis supporting a difference in treatment is identified, judicial inquiry "is at an end," United States R.R. Ret. Bd. v. Fritz, 449 U.S. 166, 179 (1980), because it is "constitutionally irrelevant whether this reasoning in fact underlay the . . . decision," Fritz, 449 U.S. at 179.  A classification fails rational-basis review only if "the facts preclude[ ] any plausible inference" that a legitimate basis underlies the difference in treatment.  Nordlinger, 505 U.S. at 16.  Finally, because even a hypothesized justification suffices, the rational-basis standard sometimes permits dismissal in advance of discovery.[21]

The complaint sufficiently alleges both elements of a "class of one" equal protection claim against the City.  First, the complaint sufficiently alleges that Pete's was treated differently from similarly situated local towing services.  See Compl. 16. Additionally, although unable to identify the reason for the difference in treatment, the

_____

[21]  See Wroblewski v. City of Washburn, 965 F.2d 452, 459 (7th Cir. 1992) (if rational basis for challenged action is plausible and supported by the allegations in the complaint, dismissal for failure to state a claim is warranted); see also Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1207 (11th Cir. 2007); Parrish v. Consol. City of Jacksonville, No. 3:04-cv-986-J-32HTS, 2005 WL 1500894, *3 (M.D. Fla. June 22, 2005).

plaintiff sufficiently alleges that the difference in treatment was intentional and was wholly irrational and arbitrary.[22]

Admittedly, the existence of a "class of one" equal protection claim in the circumstances alleged appears doubtful in light of recent decisions of the United States Supreme Court and the Eleventh Circuit. Engquist v. Or. Dep't of Agric., ___ U.S. ___, 128 S. Ct. 2146 (2008) resolves in one respect uncertainty[23] as to the scope of "class of one" claims. Engquist holds that a public employee may not assert an equal protection violation based on a "class of one" theory of liability. Engquist relies not only on the "significantly greater leeway [the government enjoys] in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large," 128 S. Ct. at 2151, but also on the principle that, with respect to "some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. . . . treating like individuals differently is an accepted consequence of the discretion granted to governmental officials," 128 S. Ct. at 2154. Engquist concludes that "[t]his principle applies most clearly in the employment context, for employment decisions are quite often subjective and

---

[22] Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 n.6 (11th Cir. 2006) notes that although some circuits (following Justice Bryer's concurring opinion in Village of Willowbrook v. Olech, 528 U.S. 562 (2000)) have interpreted Olech as requiring ill will on the part of the defendant, "other circuits following Olech have found that a plaintiff can also bring a successful equal protection claim merely by 'negativing every conceivable basis which might support' the government action." 434 F.3d at 1314 n.6 (citing Warren v. City of Athens, Ohio, 411 F.3d 697, 711 (6th Cir. 2005). However, Campbell declines to decide "whether illegal animus is required to show a equal protection violation." But cf. Williams v. Pryor, 240 F.3d 944, 951 (11th Cir. 2001) (stating that Olech holds that a plaintiff "stated constitutional Equal Protection Clause cause of action by alleging that village acted irrationally, wholly arbitrarily, and out of malice toward plaintiff."). In any event, the complaint alleges (Compl. ¶ 8) that all the actions described in the complaint "were motivated by . . . malicious ill-will directed toward Plaintiff."

[23] See, e.g., Jennings v. City of Stillwater, 383 F.3d 1199, 1210 (10th Cir. 2004) (noting that "[i]n the wake of Olech, the lower courts have struggled to define the contours of class-of-one cases" and that "[c]ommentators have similarly noted this confusion.").

individualized, resting on a wide array of factors that are difficult to articulate and quantify."  128 S. Ct. at 2154.

Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269 (11th Cir. 2008), extends Engquist's preclusion of a "class of one" equal protection claim to a government contractor.  To support the extension, Douglas Asphalt relies in part on the "obvious" similarity between a government employee and a government contractor recognized in Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr, 518 U.S. 668 (1996), and the fact that "decisions involving government contractors," like employment decisions, "require broad discretion that may rest 'on a wide array of factors that are difficult to articulate and quantify.'"  Douglas Asphalt, 541 F.3d at, 1274 (quoting Engquist, 128 S. Ct. at 2154).

To the extent that count four depends on the plaintiff's removal from the towing rotation, the viability of the "class of one" claim appears doubtful after Engquist and Douglas Asphalt because the rationale of the decisions appears equally applicable to Pete's non-contractual relationship with the City.  To the extent that count five depends on any dissimilar treatment by the City's police, the claim appears doubtful because of the broad discretion enjoyed by law enforcement and the necessity of individualized, subjective judgment.[24]  However, although Engquist, Douglas Asphalt, the exacting standard for demonstrating similarly situated comparators, and the deferential standard of judicial review render remote the likelihood of the plaintiff's successfully establishing a

---

[24]  See Engquist, 128 S. Ct. at 2154; see also Jennings v. City of Stillwater, 383 F.3d 1199, 1211 (10th Cir. 2004) ("[A] certain degree of randomness and irrationality necessarily 'abounds at the bottom rung of law enforcement.'") (quoting Bell v. Duperrault, 367 F.3d 703, 712 (7th Cir.2004) (Posner, J., concurring)); Jennings, 383 F.3d at 1211 ("An insistence that all government officials be able to provide articulable reasonable grounds for every difference in treatment would open almost every low-level decision to attack, and play havoc with the daily operation of government.").

"class of one" claim, the complaint's allegations suffice to notify the City of the nature of the plaintiff's claim and the supporting grounds and to state a claim under Olech against the City.

First Amendment Retaliation

Count five alleges that "Plaintiff's complaints to the City's responsible officials . . . were protected by the First Amendment . . . and the retaliatory actions of removing Plaintiff from the City and County towing rotations abridged such rights, in violation of 42 U.S.C. § 1983." Although count five mentions no defendant, the complaint presumably directs count five against the City. The City asserts that Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005) governs the claim, and the plaintiff contends that O'Hare Truck Service, Inc. v. City of Northlake, 518 U.S. 712 (1996), Board of County Com'rs, Wabaunsee County, Kan. v. Umbehr, 518 U.S. 668 (1996), and related cases govern the claim.

O'Hare and Umbehr confirm that "the government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech' even if the person has no entitlement to the benefit." Umbehr, 518 U.S. at 674 (quoting Perry v. Sindermann, 408 U.S. 593, 597 (1972); see also O'Hare, 518 U.S. at 725-26 (citing Perry, 408 U.S. at 597); Mangieri v. DCH Healthcare Auth., 304 F.3d 1072, 1075 and n.8 (11th Cir. 2002). In Umbehr, an independent contractor alleged that county commissioners terminated his trash-hauling contract in retaliation for criticism of the county and the board. Umbehr rejects the position that, because the independent contractor had no property interest in the renewal of the contract, the government could terminate the contract in retaliation for the contractor's exercise of his freedom of political affiliation and participation. Accordingly, Umbehr holds that (a) the First

- 19 -

Amendment protects an independent contractor "from the termination of at-will

government contracts in retaliation for their exercise of the freedom of speech," 518

U.S. at 670, and (b) the balancing test applied in the government employment context

under Pickering v. Board of Education of Township High School District 205, Will

County, 391 U.S. 563 (1968), and its progeny, "adjusted to weigh the government's

interests as contractor rather than as employer," 518 U.S. at 673, determines the extent

of the protection.[25]

O'Hare holds that a city council could not condition a towing service's continued

inclusion on a call rotation list on political support of a city council member.  O'Hare, 518

U.S. at 714-15.  In O'Hare, no contract existed between the city and the towing

company.  See O'Hare, 518 U.S. at 715.[26]  However, "[b]ecause  the city had previously

had a practice of only removing tow companies from the rotation list for cause, the Court

concluded the parties had an expectation that their commercial relationship with the city

would continue as long as their service was not poor."  Mangieri, 304 F.3d at 1075 n.7

(citing O'Hare, 518 U.S. at 720-21).  Although stating loosely that the case involved an

independent contractor, O'Hare holds that the First Amendment protections recognized

in Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980),

"extend to an instance like the one before us, where government retaliates against a

---

[25]  Because the Umbehr plaintiffs' claim arose from "the termination of a pre-existing commercial relationship with the government," Umbehr declines to address "suits by bidders or applicants for new government contracts who cannot rely on such a relationship."  Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr, 518 U.S. 668, 685 (1996).

[26]  See also Umbehr, 518 U.S. 668, 708-709 (Scalia, J., dissenting) ("O'Hare did not involve termination of a contract."); O'Hare Truck Serv., Inc. v. City of Northlake, 47 F.3d 883, 884, 886 n.1 (7th Cir. 1995), rev'd, 518 U.S. 712 (1996); Mangieri v. DCH Healthcare Auth., 304 F.3d 1072, 1075 n.7 (11th Cir. 2002); see also Housing Works, Inc. v. Guiliani, 56 Fed. Appx. 530, 533 (2d Cir. 2003).

contractor, <u>or</u> a regular provider of services, for the exercise of rights of political association or the expression of political allegiance." 518 U.S. at 714-15 (emphasis added). <u>O'Hare</u> remands the action for a determination whether the plaintiff's retaliation claim is governed by <u>Elrod</u> and <u>Branti</u> (which govern a political patronage or political affiliation claim) or by <u>Pickering</u>, which applies if "a government employer takes adverse action on account of an employee <u>or</u> service provider's right of free speech," <u>O'Hare</u>, 518 U.S. at 718 (emphasis added).

<u>Umbehr</u> and <u>O'Hare</u> suggest that <u>Pickering</u> and its progeny govern count five because (a) the plaintiff occupies with respect to the City essentially the same position as the plaintiffs in <u>O'Hare</u> and (b) <u>Elrod</u> and <u>Branti</u> are plainly inapposite.[27] To establish a claim of retaliation under <u>Pickering</u> and its progeny, the plaintiff must show that (1) in complaining to the City and the Police Department, the plaintiff spoke as a citizen addressing a public concern; (2) the plaintiff's interest in the speech outweighs the City's interest in prohibiting the speech; and (3) the plaintiff's speech played a substantial or motivating part in the City's decision to remove the plaintiff from the towing rotation. <u>See</u> <u>Vila v. Padron</u>, 484 F.3d 1334, 1339 (11th Cir. 2007); <u>Boyce v. Andrew</u>, 510 F.3d 1333, 134-42 (11th Cir. 2007); <u>Umbehr</u>, 518 U.S. at 675-76. "If the plaintiff establishes these elements, the burden shifts to the defendant to prove it would have made the same adverse . . . decision absent the employee's speech." <u>Padron</u>, 484 F.3d at 1339; <u>see also</u> <u>Umbehr</u>, 518 U.S. at 675.

---

[27] <u>See also</u> <u>S&S Research, Inc. v. Paulszcyk</u>, 44 Fed. Appx. 744, 746 (7th Cir. 2002); <u>White Plains Towing Corp. v. Patterson</u>, 991 F.2d 1049, 1059 (2d Cir. 1993). <u>But see</u> <u>Blackburn v. City of Marshall</u>, 42 F.3d 925, 932 (5th Cir. 1995). Characterizing count five as a retaliation claim under the First Amendment's Petitions Clause does not change the analysis. <u>See</u> <u>Grigley v. City of Atlanta</u>, 136 F.3d 752, 753 (11th Cir. 1998) (holding that "the 'public concern' requirement applies to First Amendment right to petition claims.").

The threshold question is whether the complaint adequately alleges that, when addressing its complaining to the City and the Police Department, the plaintiff spoke as a citizen addressing a public concern.  See Padron, 484 F.3d at 1339.  The plaintiff's complaints are protected by the First Amendment if they may be "fairly characterized as constituting speech on a matter of public concern."  Connick v. Myers, 461 U.S. 138, 146 (1983).  "Whether . . . speech addresses a matter of public concern must be determined by the content, form, and context" of the expression.  Connick, 461 U.S. at 147-48.  "The fact that information may be of general interest to the public . . . does not alone make it of 'public concern' for First Amendment purposes."  Morris v. Crow, 142 F.3d 1379, 1381 (11th Cir. 1998) (citing Connick, 461 U.S. at 148 n.8).  "Not only must the speech be related to matters of public interest, but the purpose of the expression must be to present such issues as matters of 'public' concern."  Morris, 142 F.3d at 1382.[28]  Finally, if it is unclear whether the plaintiff's complaint involves a public concern, retaliation for the complaint violates no clearly established First Amendment right and the individual defendant involved in the alleged retaliation enjoys qualified immunity as to the claim.  See Badia v. City of Miami, 133 F.3d 1443, 1445 (11th Cir. 1998).

The complaint includes no allegation that the plaintiff's complaints to the City and the Police Department addressed a matter of public concern.  Accordingly, count five fails to state a Section 1983 First Amendment retaliation claim.  See Hayden v. Coppage, 533 F. Supp. 2d 1186, 1197 (M.D. Ala. 2008) ("To survive the motion to

---

[28]   See also Tindal v. Montgomery County Comm'n, 32 F.3d 1535, 1539-40 (11th Cir. 1994) (generally, "no First Amendment protection attaches to speech that–for personal benefit–exposes personally suffered harassment or discrimination) (emphasis in original); Badia v. City of Miami, 133 F.3d 1443, 1445 (11th Cir. 1998).

dismiss, Plaintiff must allege facts demonstrating that he spoke on a matter of public concern . . . .").

### Claims Against the Individual Defendants

Although the plaintiff's shotgun pleading inhibits understanding which claim is directed at which defendant, the complaint appears to assert each count against each individual defendant.

### Official Capacity Claims

The plaintiff admits (Doc. 14 at 1; Doc. 15 at 2; Doc. 16 at 1) that the plaintiff's ability to sue the City directly "obviates the need for official capacity actions against the individual Defendants."  Suits against an individual in his official capacity under Section 1983 "generally represent only another way of pleading an action against an entity of which an officer is an agent."  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  Kentucky v. Graham, 473 U.S. 159, 166 (1985). Accordingly, in a suit against both a municipal entity and the entity's officer in his official capacity, avoidance of redundancy compels dismissal of the named individual defendant in his official capacity.  Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991).  Accordingly, to the extent the complaint asserts a claim against an individual defendant in an official capacity, the claim is redundant and properly dismissed with prejudice.  See Edison v. Florida, 2007 WL 80831, No. 2:04-cv-157, *2 (M.D. Fla. Jan. 8, 2007); Bailey v. Town of Lady Lake, No. 5:05-cv-464-Oc-10GRJ, 2006 WL 2048250 (M.D. Fla. July 20, 2006).

Conspiracy

The complaint alleges that the actions alleged in the introductory paragraphs "reflect a conspiracy involving numerous members of the City of Tampa Police Department, including supervisors, and, on information and belief, may have involved higher ranking officials of the City."  Additionally, under count one, the complaint alleges generally that the conduct alleged "reflect[s] an intentional conspiracy" that "violates 42 U.S.C. §§ 1983 and 1985(3)."

"The elements of a cause of action under § 1985(3) are: (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Trawinski v. United Techs., 313 F.3d 1295, 1299 (11th Cir. 2002) (citation omitted).  Section 1985(3)'s second element, that is, "the language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).  The complaint alleges no class-based discriminatory animus motivating the alleged conspirators' actions and therefore fails to state a claim under Section  § 1985(3).

To establish a prima facie case of a Section 1983 conspiracy, a plaintiff must show that "the defendants reached an understanding to deny the plaintiff's rights." Hadley v. Gutierrez, 526 F.3d 1324, 1332 (11th Cir. 2008) (citing Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir.1990)).  Additionally, the plaintiff must show "an underlying actual denial of [his] constitutional rights." Hadley, 526 F.3d at 1332 (quoting

- 24 -

GJR Invs., 132 F.3d at 1370).[29]  Finally, "[a] plaintiff claiming a conspiracy under § 1983

must make particularized allegations that a conspiracy exists."  Hansel v. All Gone

Towing Co., 132 Fed. Appx. 308, 309 (11th Cir. 2005) (citing GJR Invs, 132 F.3d at

1370).  Vague and conclusory allegations suggesting a Section 1983 conspiracy are

insufficient.  Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984).  Here, the

plaintiff fails to allege even that the defendants reached an agreement or understanding

to deny the plaintiff's rights, and the complaint includes no particularized allegations as

to a conspiracy.  The vague and conclusory allegation that the acts alleged "reflect a

conspiracy involving numerous" unspecified Tampa police officers is insufficient.

Laurie Woodham

The complaint alleges that Woodham, an Assistant District Attorney for the City,

threatened the plaintiff's owners with arrest "on extortion and other charges" on May 9,

2007.[30]  The complaint fails to state a claim against Woodham for the reasons stated

above and because (1) as to counts two and three (procedural due process), the single

alleged threat did not cognizably burden a protected liberty or property interest of the

plaintiff; (2) as to count four (equal protection), the plaintiff does not "sufficiently

particularize a similarly situated comparator," Douglas Asphalt, 541 F.3d at 1275, and

therefore fails to satisfy the applicable heightened pleading requirement; and (3) as to

_____

[29]  See also Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990) ("The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy.").

[30]  Woodham asserts no absolute immunity defense, and the plaintiff contends that Woodham is not entitled to absolute immunity because the alleged threat was not made as part of her customary duties as a prosecutor.  See Jones v. Cannon, 174 F.3d 1271, 1281-82 (11th Cir. 1999) ("Although absolutely immune for actions taken as an advocate, the prosecutor has only qualified immunity when performing a function that is not associated with his role as an advocate for the state.") (citing Buckley v. Fitzsimmons, 509 U.S. 259, 269-70 (1993)).

count five (first amendment retaliation), the complaint alleges no participation by Woodham in the City's decision to remove the plaintiff from the towing rotation. Additionally, Woodham enjoys qualified immunity as to counts two and three for the reasons stated above.

### Officer Patricia Lastra

Apart from the conspiracy allegation, the complaint alleges that Officer Lastra threatened the plaintiff's owners with arrest on extortion and other charges on August 16, 2006. The complaint fails to state a claim against Lastra for the reasons stated above and because (1) as to counts two and three (procedural due process), the single alleged threat did not cognizably burden a protected liberty or property interest of the plaintiff; (2) as to count four (equal protection), the plaintiff does not sufficiently particularize a similarly situated comparator and therefore fails to satisfy the applicable heightened pleading requirement; and (3) as to count five (first amendment retaliation), the complaint alleges no participation by Lastra in the City's decision to remove the plaintiff from the towing rotation. Additionally, Lastra enjoys qualified immunity as to counts two and three for the reasons stated above.

### Officer Orlando Gudes

Apart from the conspiracy allegation, the complaint alleges that (a) from "early 2006 to present," Officer Gudes threatened the plaintiff's employees with arrest for sending tow trucks in response to lawful towing orders and for refusing to release lawfully towed vehicles; (b) Officer Gudes encouraged the plaintiff's employees to leave the plaintiff's employment; and (c) Officer Gudes falsely informed owners of towed vehicles that the plaintiff "steals cars and charges excessive fees," advised customers to sue the plaintiff, and informed customers that the plaintiff's business would be closed.

- 26 -

Counts one, four, and five fail to state claim against Gudes for the reasons stated above and because (1) as to count four, the plaintiff fails to satisfy the applicable heightened pleading requirement; and (2) as to count five (first amendment retaliation), the complaint alleges no participation by Gudes in the City's decision to remove the plaintiff from the towing rotation.  Additionally, Gudes enjoys qualified immunity as to counts two and three for the reasons stated above.

Sergeant Jose Penichet

Apart from the conspiracy allegation and a general allegation that Sergeant Penichet participated in the campaign of harassment directed against Pete's, the complaint alleges that (a) Sergeant Penichet is a "supervisory official with the City of Tampa Police Department" and "the remaining named and unnamed officers are or were . . . subject to the supervision of . . . Penichet"; (b) Sergeant Penichet threatened the plaintiff's owners with arrest on extortion and other charges on  May 9, 2007; and (c) Sergeant Penichet threatened the plaintiff's employees with arrest on an unspecified occasion for sending tow trucks in response to lawful towing orders.    Supervisory liability under Section 1983 occurs "'when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation.'"  Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (quoting Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

> A causal connection may be established when: 1) a 'history of widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act

- 27 -

unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

Crosby, 480 F.3d at 1270 (citing Cottone, 326 F.3d at 1360).  "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."  West v. Tillman, 496 F.3d 1321, 1329 (11th Cir. 2007) (citing Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).  The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is "extremely rigorous."  Cottone, 326 F.3d at 1360.

Counts one, four, and five fail to state claim against Penichet based on his own alleged threats and verbal harassment for the reasons stated above and because (1) as to count four (equal protection), the plaintiff does not satisfy the applicable heightened pleading requirement; and (2) as to count five (first amendment retaliation), the complaint alleges no participation by Penichet in the City's decision to remove the plaintiff from the towing rotation.  Additionally, Penichet enjoys qualified immunity as to counts two and three for the reasons stated above.  However, if liberally construed, count four sufficiently alleges a violation of clearly established law on the part of Penichet under a supervisory liability theory.  The complaint alleges that (i) Penichet supervised the participants in the campaign of harassment and intimidation and (ii) the campaign continued for two years despite repeated protests and complaints to the Police Department.  In short, the complaint alleges a history of widespread that put the police officers' responsible supervisors on notice of the need to correct the alleged deprivation of the plaintiff's rights and Penichet's failure to correct the alleged deprivation.

Sergeant Michael Kitts

Apart from the conspiracy allegation, the complaint alleges only that Sergeant Kitts is a "supervisory official with the City of Tampa Police Department" and that "the remaining named and unnamed officers are or were . . . subject to the supervision of Sergeant Kitts." The complaint fails to state a claim against Kitts based on any direct participation in the alleged campaign of harassment. However, if liberally construed, count four sufficiently alleges a violation of clearly established law on the part of Kitts under a supervisory liability theory. The complaint alleges that (i) Kitts supervised the participants in the campaign of harassment and intimidation and (ii) the campaign continued for two years despite repeated protests and complaints to the Police Department. In short, the complaint alleges a history of widespread abuse that put the police officers' responsible supervisors on notice of the need to correct the alleged deprivation of the plaintiff's rights and Kitts's failure to correct the alleged deprivation.

Police Chief Stephen Hogue

The complaint alleges that as the Police Chief of the City of Tampa, Chief Hogue was "the policy maker in charge of and responsible for the Defendant City's regulation of vehicle towing within the city limits" and that all the defendant officers were subject to Chief Hogue's ultimate supervision. If liberally construed, count four sufficiently alleges a a a violation of clearly established law on the part of Hogue under a supervisory liability theory. The complaint alleges that (i) Hogue was the ultimate supervisor of the participants in the campaign of harassment and intimidation and (ii) the campaign continued for two years despite repeated protests and complaints to the Police Department. In short, the complaint alleges a history of widespread abuse that put the

police officers' responsible supervisors on notice of the need to correct the alleged

deprivation of the plaintiff's rights and Hogue's failure to correct the alleged deprivation.

## CONCLUSION

In summary, the City's motion to dismiss (Doc. 4) is **GRANTED** to the extent that

counts one and five are **DISMISSED WITHOUT PREJUDICE** as to the City.

Laurie Woodham's motion to dismiss (Doc. 6) is **GRANTED** to the extent that all

claims against Laurie Woodham in her official capacity are **DISMISSED WITH**

**PREJUDICE** and all claims against Woodham in her individual capacity are

**DISMISSED WITHOUT PREJUDICE**.

The officers' motion to dismiss (Doc. 7) is **GRANTED IN PART** as follows.  All

claims against Penichet, Lastra, Gudes, and Kitts in their official capacities are

**DISMISSED WITH PREJUDICE**.  All claims against Patricia Lastra and Orlando Gudes

in their individual capacities are **DISMISSED WITHOUT PREJUDICE**.   Counts one,

two, three, and five are **DISMISSED WITHOUT PREJUDICE** as to Penichet and Kitts in

their individual capacities.

Hogue's motion to dismiss (Doc. 5) is **GRANTED IN PART** as follows.  All claims

against Hogue in his official capacity are **DISMISSED WITH PREJUDICE**.  Counts one,

two, three, and five are **DISMISSED WITHOUT PREJUDICE** as to Hogue in his

individual capacity.

On or before **November 21, 2008**, the plaintiff may file an amended complaint

correcting the deficiencies discussed in this order.  An amended complaint shall comply

with Rule 10(b), Federal Rules of Civil Procedure, and specify which count is directed at

which defendant.

Additionally, more than one hundred and twenty days have passed since the complaint was filed, Johnny L. Adkins has not voluntarily appeared, and the plaintiff has not filed proof of service on Adkins.  Accordingly, on or before **November 21, 2008**, the plaintiff shall serve the summons and complaint on Adkins in accordance with the requirements of Rule 4 and file proof of service with the Clerk, failing which the plaintiff's claims against Adkins will be dismissed without further notice.  See Fed. R. Civ. P. 4(m). Finally, on or before **November 21, 2008**, the plaintiff shall serve the summons and complaint on any unnamed defendant, failing which the claims against "other officers presently unknown" will be dismissed without further notice.  See Fed. R. Civ. P. 4(m).

ORDERED in Tampa, Florida, on October 29, 2008.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 31 -